# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LISA MERTINS,**

    **Plaintiff,**

    **v.**                                                                                   Case No. 22-CV-973

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

Lisa Mertins seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her Title II application for a period of disability and disability insurance benefits. For the reasons explained below, the Commissioner's decision is affirmed, and the case is dismissed.

## BACKGROUND

On December 1, 2014, Mertins filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning August 17, 2014 due to depression, anxiety, lupus, extreme fatigue, and polyarthralgia. (Tr. 209.) The claim was denied initially and upon reconsideration. (Tr. 13.) Mertins filed a request for a hearing, and a hearing was held on March 28, 2017. (Tr. 29–78.) Mertins, represented by counsel, testified, as did Kristin Panella, a vocational expert ("VE"). In a decision issued October 27, 2017, Administrative Law Judge ("ALJ") Chad Gendreau denied Mertins' disability claim. (Tr. 13–22.) The Appeals Council denied Mertins' request for review on July 17, 2018 (Tr. 1–5) and Mertins subsequently filed a complaint in federal court, *Mertins v. Berryhill*, Case No. 18-CV-1472

(E.D. Wis. Sept. 20, 2019) (Tr. 847–49). The parties jointly agreed to remand the case for further proceedings and the case was returned to ALJ Gendreau. (Tr. 857–61.) ALJ Gendreau held a new hearing on January 21, 2020. (Tr. 809–42.) Mertins, again represented by counsel, testified, as did VE Charlotte Ewers. (*Id.*) ALJ Gendreau again denied Mertins' disability claim on March 25, 2020, and Mertins filed written exceptions to that decision on April 29, 2020. (Tr. 899–12, 923.) The Appeals Council found error and remanded the case to a different ALJ. (Tr. 923–25.) A third hearing was held on June 22, 2021 before ALJ William Shenkenberg. (Tr. 771–808.) Mertins, represented by counsel, testified, as did VE James Breen and Medical Expert Dr. Steven Golub. (*Id.*)

In a decision issued November 18, 2021, ALJ Shenkenberg found that Mertins had the severe impairments of undifferentiated connective tissue disease, systemic lupus erythematosus, fibromyalgia, anemia, obesity, depression, and anxiety. (Tr. 745.) He found that Mertins did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 746–48.) ALJ Shenkenberg found that Mertins had the residual functional capacity ("RFC") to perform sedentary work with the following limitations: occasional pushing or pulling with the upper extremities; occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; frequent overhead reaching, handling, fingering, and feeling bilaterally; avoiding all exposure to extreme cold, extreme heat, and hazards such as moving machinery and unprotected heights; avoiding concentrated exposure to excessive vibration; understanding, remembering, and carrying out simple instructions, and performing simple routine tasks, in a position with only occasional changes; maintaining concentration, persistence, and pace for simple tasks in

two-hour increments; and occasional interaction with the public and supervisors. (Tr. 748–59.)

ALJ Shenkenberg found that Mertins was unable to perform her past relevant work as a teacher's aide; however, given her age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. 759.) As such, ALJ Shenkenberg found Mertins was not disabled from her alleged onset date of August 17, 2014, through June 30, 2020, her date last insured.[1] (Tr. 760–61.) While Mertins again filed written exceptions to the ALJ's finding, the Appeals Council found no error with the ALJ's November 18, 2021 decision. Thus, the ALJ's decision became the Commissioner's final decision. (Tr. 733.) It is this denial that Mertins now appeals.

## DISCUSSION

1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

---

[1] Because Mertins applied for disability insurance benefits she must prove that she was disabled by June 30, 2020, known as her "date last insured"—the date when she exhausted her earned quarters of coverage. *See Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010) (citing 42 U.S.C. § 423(c); 20 C.F.R. § 404.140).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

  2.  *Application to this Case*

Mertins raises a single ground for remand—that the ALJ failed to conduct a proper subjective symptoms analysis of Mertins' chronic fatigue. (Pl.'s Br. at 22–24, Docket # 10.)

  2.1  Relevant Medical History

The records indicate that as far back as 2007, Mertins complained of polyarthralgia and excessive fatigue. (Tr. 447–48.) In 2012, Mertins' treating providers opined that she had a mild case of systemic lupus; however, her manifestation of the disease was "unusual" because it predominantly manifested as neuropathy, numbness, tingling, and fatigue. (Tr. 687.) In August 2012, Mertins was referred to rheumatologist Dr. Alvin Wells for a second opinion as to lupus. (Tr. 696.)

Mertins treated with Dr. Wells' physician's assistant, PA Amanda Sell, from prior to her alleged onset date through early 2016. (Tr. 341, 345, 365, 545, 554, 564, 575, 586.) In September 2013, Mertins reported increased pain in her back and legs and fatigue. (Tr. 365.) Her musculoskeletal examination showed full range of motion of the neck, shoulders, elbows, wrists, hips, and knees, but there were multiple paraspinal muscle spasms and trigger points

4

of sub-occipital region, infraspinatus insertion, back, and lumbar sacral region, as well as mild tenderness in the knees and ankles. (Tr. 366–67.) Mertins was given Prednisone for the polyarthralgias and Flexeril for the back pain. (Tr. 368.) In January 2014, PA Sell noted that Mertins "ha[d] not been doing well" due to pain and difficulty sleeping. (Tr. 345.) The Prednisone was stopped and Mertins was started on Celebrex for the pain and Melatonin and Ambien for the insomnia. (Tr. 347.) In March, Mertins reported to PA Sell that she was feeling better overall, that the Celebrex helped the pain, and she was sleeping better with the Melatonin. (Tr. 341.) Just before Mertins' alleged onset date, in July 2014, PA Sell noted that Mertins continued to have diffuse arthralgias, stating that her whole body hurt. (Tr. 545.) Mertins presented to an emergency walk-in clinic on October 6, 2014, complaining of back pain and back spasms. (Tr. 391.)

On October 21, Mertins informed PA Sell that she had not been doing well since their last appointment and had missed six days of work in the past few months because of extreme fatigue and pain. (Tr. 554.) She was given Savella for the pain and Nuvigil for the fatigue and exhaustion. (Tr. 556.) The next day, Mertins fainted while watching television at home and went to the emergency room. (Tr. 430.) On October 24, Mertins followed-up with Dr. Gerald Wisniewski, who questioned whether the cluster of medications she was taking, which included Effexor, Plaquenil, and Neurotin, as well as the recent additions of Nuvigil and Savella, contributed to the fainting. (T. 398, 401.) He further noted, however, that Mertins was "back to normal and feeling well" and had no further issues despite the continued use of all the medications. (*Id.*) On November 17, Mertins followed-up with NP Suzanne Cooper regarding the fainting episode. (Tr. 403.) NP Cooper noted Mertins had overwhelming fatigue and pain and noted that Mertins stated that she just quit her job today. (*Id.*) In December, PA

Sell noted that Mertins called requesting Dr. Wells complete disability paperwork for lupus. (Tr. 625.) Mertins was informed that while she came to their clinic with the previous diagnosis of lupus, there had been no lab or exam findings to indicate that her lupus was active, so they would not complete the paperwork. (*Id.*)

Mertins treated again with PA Sell in February 2015. (Tr. 564.) Mertins reported that she was not doing well and in December learned her insurance would not cover Celebrex so she stopped taking it. (*Id.*) She stated that her sciatica flare was so bad the last week that she could barely get out of bed and only got dressed one out of the past six days. (*Id.*) Mertins rated her pain level as nine out of ten. (*Id.*) PA Sell noted that while she had sent a replacement prescription for the Celebrex in December, Mertins never received it. (Tr. 566.) The prescription was re-sent and Mertins was given another medication for six days to provide more immediate relief. (*Id.*) In July, Mertins reported to PA Sell that she had not been doing well since the last visit, as the pain in her feet had increased and was waking her up in the middle of the night between three and four times a week. (Tr. 576.) Mertins continued to feel very fatigued and that the Melatonin was not helping. (*Id.*) Mertins was given Zorvolex for the polyarthralgias and Ambien for fatigue and insomnia. (Tr. 577.)

In September 2015, Mertins began treating with Steven Kenzer, DO for her rheumatology issues. (Tr. 1271.) Dr. Kenzer noted that while Mertins had a positive ANA[2], there was no evidence of connective tissue disease. (Tr. 1274.) He noted that she suffered from anxiety, depression, and fibromyalgia. (*Id.*) In November, Dr. Kenzer noted that Mertins

---

[2] An ANA test detects antinuclear antibodies in the blood. "In most cases, a positive ANA test indicates that your immune system has launched a misdirected attack on your own tissue—in other words, an autoimmune reaction." https://www.mayoclinic.org/tests-procedures/ana-test/about/pac-20385204 (last visited Sept. 18, 2023).

presented with positive ANA and CCP[3] results, as well as fibromyalgia. (*Id.*) Dr. Kenzer noted that while there was no evidence of active rheumatoid arthritis, Mertins was continued on Plaquenil and referred to physical therapy. (Tr. 1277–78.)

In February 2016, Mertins reported to PA Sell that she had not been doing well since their last visit, although she did have some really good days in addition to her really bad days. (Tr. 586.) Mertins stated that on the really bad days, she was unable to function because of the pain and that those days occurred two to three times per week. (*Id.*) Mertins stated that sometimes she was unable to function due to fatigue, but it was usually because of pain. (*Id.*) PA Sell noted that Mertins stated she had been unable to work in over a year and a half because of pain and that her family was struggling financially. (Tr. 587.) Mertins reported continued fatigue despite Nuvigil. (*Id.*) PA Sell noted no evidence of lupus or rheumatoid arthritis on her examination to explain her bad days. (Tr. 588.) The Savella was increased. (*Id.*) Also in February, Mertins began physical therapy to address her patellofemoral pain; however, she was discharged after two sessions due to missing appointments. (Tr. 1278–86.)

Mertins treated with Dr. Kenzer in May, September, and December 2016. (Tr. 519, 529, 1286, 1500.) At these appointments, Mertins complained of daily pain exacerbated with prolonged ambulation and improved with rest and medication. (*Id.*) Mertins was prescribed Lyrica for her fibromyalgia. (Tr. 1504.) At the December appointment, Dr. Kenzer noted Mertins experienced improvement with Lyrica. (Tr. 529.) At each of these three appointments, Mertins' physical examination findings were normal. (Tr. 521, 1289, 1503.) Dr. Kenzer's treatment records from 2017 and 2018 similarly indicate that Mertins had been

---

[3] The CCP (cyclic citrullinated peptide) test looks for antibodies in the blood. "CCP antibodies target healthy tissues in the joints. If CCP antibodies are found in your blood, it can be a sign of rheumatoid arthritis." https://medlineplus.gov/lab-tests/ccp-antibody-test/ (last visited Sept. 18, 2023).

7

diagnosed with undifferentiated connective tissue disease and fibromyalgia, but that she experienced improvement with medication, and her physical examinations were normal. (Tr. 1363–67, 1374–78, 1383–87, 1395–99, 1406–10.) Dr. Kenzer consistently described Mertins' connective tissue disease as "stable." (*Id.*)

In March 2019, Dr. Kenzer referred Mertins to Malik T. Bandealy, MD, a hematologist, to evaluate Mertins' anemia. (Tr. 1572.) Dr. Bandealy noted that Mertins' anemia dated back to at least April 2017 and that she had been iron deficient since at least December 2016. (Tr. 1572–73.) Dr. Bandealy noted that Mertins reported fatigue. (Tr. 1573, 1575.) Dr. Bandealy stated that Mertins' laboratory results suggested she was experiencing "profound iron deficiency," likely due to an auto immune disease, and recommended intravenous iron replacement. (Tr. 1578.)

In April 2019, Dr. Kenzer noted that Mertins saw improvement in her generalized pain on Diclofenac and Gabapentin. (Tr. 1415.) Her pain was rated five out of ten. (*Id.*) He listed her connective tissue disease as "stable" and her fibromyalgia and insomnia as "relatively stable." (Tr. 1418.) After undergoing intravenous iron replacement treatments, Mertins reported feeling much better for a few days, but in June, she told Dr. Bandealy she was back to feeling tired. (Tr. 1627.) In October, Mertins reported an increase in fatigue (Tr. 1638) and her tests indicated she was again iron deficient (Tr. 1643). Dr. Bandealy opined that Mertins' iron deficiency likely stemmed from her very heavy menstrual periods and prescribed more intravenous iron. (*Id.*) For the remainder of the records covering 2019 and 2020, Dr. Kenzer continued to note that Mertins' generalized pain improved with medication and that her diagnoses were "stable" (Tr. 1425–28, 1979–81, 2041–44) and Dr. Bandealy

noted that while Mertins improved after the intravenous iron treatments, her fatigue would return (Tr. 2034–38).

### 2.2 Analysis of Subjective Symptoms

Mertins argues that the ALJ failed to conduct a proper analysis of her subjective symptoms related to chronic fatigue. (Pl.'s Br. at 22–24.) In evaluating one's subjective symptoms, the regulations instruct ALJs to consider a number of factors, including: (1) relevant medical evidence, including intensity and limiting effects of symptoms, 20 C.F.R. § 404.1529(c)(2); (2) treatment and efficacy, *id.* § 404.1529(c)(3)(iv)-(v); (3) return to gainful activity, *id.* § 404.1571; (4) work during disability period, *id.*; (5) daily activities, *id.* § 404.1529(c)(3)(i); and (6) statements inconsistent with the record, *id.* § 404.1529(c)(4). An ALJ need not discuss every detail in the record as it relates to every factor. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). "Summaries of medical evidence, while definitionally 'partial and selective,' are appropriate." *Id.* However, while ALJs do not need to address every piece of evidence in the record, an ALJ may not ignore an entire line of evidence contrary to its ruling. *Id.* "As long as an ALJ gives specific reasons supported by the record, we will not overturn a credibility determination unless it is patently wrong." *Id.* at 1279.

Mertins argues that although she "repeatedly attested that her overwhelming fatigue was a major, if not the main, reason she is unable to sustain fulltime work," the ALJ failed to discuss how Mertins could sustain full-time work while dealing with her extreme fatigue. (*Id.*) She argues that although the ALJ mentions her fatigue in the decision, he fails to explain how the record evidence is inconsistent with her subjective complaints. (*Id.* at 23–24.) At bottom, Mertins faults the ALJ for failing "to show his work" in rejecting her statements of disabling fatigue. (Pl.'s Reply Br. at 2, Docket # 13.)

I disagree. This is not a case where the ALJ ignored an entire line of evidence contrary to his ruling. On the contrary, the ALJ very thoroughly addresses the entire record of relevant evidence. Even so, an ALJ need not discuss every detail in the record as it relates to every factor. *See Grotts v. Kijakazi*, 27 F.4th at 1278. Again, "[s]ummaries of medical evidence, while definitionally 'partial and selective,' are appropriate." *Id.*

The record indicates that Mertins experienced excessive fatigue as early as 2007 and was diagnosed in 2012 with lupus that manifested itself, among other ways, in symptoms of fatigue. (Tr. 448, 687.) The ALJ acknowledges both facts. (Tr. 750.) The records further indicates that in October 2014, Mertins complained of severe exhaustion and fatigue and her rheumatologist prescribed Nuvigil to address her fatigue. (Tr. 554–56.) The ALJ cites to this record as well. (Tr. 750.) The ALJ notes that Mertins reported a deteriorated condition to her rheumatologist in February and July 2015. (Tr. 751.) He noted that Mertins stated during the February 2015 consultative psychological evaluation that "profound fatigue" was her "number one problem," that she stated she needed to pace herself performing household activities due to pain and fatigue, and that during her June 2015 consultative examination she complained of extreme fatigue. (Tr. 751–52.) The ALJ makes clear that Mertins is alleging disabling physical impairments due to fatigue, amongst other things. (Tr. 753.)

And the ALJ does not find that Mertins suffers from *no* symptoms of fatigue. He specifically states that Mertins' medications did not eliminate her pain or sleep difficulties. (Tr. 755.) He noted, however, that the records indicate that her impairments were stable, that her symptoms improved with medication, and her physical examination findings were normal. (Tr. 754.) The ALJ also considered her Adult Function Reports, where she described performing activities such as shopping at stores, reading, sewing, crocheting, emailing,

10

cooking, watching television, going to church, and attending game nights. (Tr. 749.) In other words, the ALJ did not reject that Mertins experienced fatigue, but found that she did not experience it to the degree Mertins alleges. An ALJ is not required to wholesale adopt a claimant's subjective statements. Rather, the regulations provide a framework in which an ALJ can assess the statements' consistency with the record as a whole. And that is what the ALJ does in this case. The ALJ then explains that her limitation to sedentary work accounts for her fatigue symptoms. (Tr. 755.) For example, the ALJ explains that Mertins' statements of fatigue support limiting her exposure to extreme cold, extreme heat, and hazards. (Tr. 756.) It is unclear what more Mertins expects for the ALJ to "show his work." The "logical bridge" between the evidence of fatigue and the ALJ's conclusions in this case is clear. While Mertins may have desired the ALJ provide an even more detailed analysis of her fatigue, the ALJ considered all of the relevant evidence and I can clearly trace the ALJ's reasoning in this case. Neither the regulations nor the case law require anything more. *See Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) ("If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough."). Thus, the Commissioner's decision is affirmed.

## CONCLUSION

Mertins argues that the ALJ erred in determining that she was not disabled. I find the decision is supported by substantial evidence and affirm. The case is dismissed.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this this 18th day of September, 2023.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge